**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ANGELINA S.,[1]

       Plaintiff,

   v.                                  Civ. No. 25-346 SCY

FRANK BISIGNANO,
Commissioner of
Social Security,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff argues that the Commissioner committed error when denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts that the ALJ erred in accepting the vocational expert ("VE")'s testimony that Plaintiff can perform jobs in the national economy that are obsolete and no longer exist. Plaintiff also argues that the ALJ failed to explain her partial rejection of certain findings in an examining consultant's opinion. The Court disagrees on both counts. As a result, the Court DENIES Plaintiff's Motion to Remand and affirms the decision below.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 7. 8. 9. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

**APPLICABLE LAW**

A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)    If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    <u>Standard of Review</u>

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes

its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Plaintiff argues that the ALJ erred in adopting the testimony of the vocational expert that Plaintiff can perform jobs in the national economy described in the Dictionary of Occupational Titles ("DOT") that are obsolete, such as microfilm preparer. Because the Court finds that the VE testified about these jobs as they are currently performed, the Court rejects this challenge. The Court further rejects Plaintiff's challenge related to job numbers as insufficiently developed on appeal.

Plaintiff also challenges the ALJ's evaluation of the opinion of consulting examiner Dr. Owen. The Court finds that Plaintiff has identified no error related to either the mandate of the Appeals Council to properly consider Dr. Owen's opinion or otherwise related to the ALJ's evaluation of the opinion of Dr. Owen.

## I.    VE Testimony

Based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert ("VE"), the ALJ determined that the following jobs exist in significant numbers in the national economy that Plaintiff can perform:

- document preparer (DOT #249.587-018), 63,461 jobs nationally;

- surveillance system monitor (DOT# 379.367-010), 13,173 jobs nationally;

- addresser (DOT# 209.587-010), 5,740 jobs nationally.

AR 1135.

Plaintiff challenges this finding on appeal, arguing that the jobs identified are obsolete and the VE testimony is therefore not substantial evidence supporting the ALJ's decision:

> The vocational expert concealed a microfilming job behind the job title "document preparer." The job is a "Document Preparer, Microfilming." DOT 249.587-018. Unfortunately, microfilming is all but obsolete; it is an analog storage system superseded in the modern world by digital imaging. The ALJ unreasonably accepted the testimony that 63,461 persons perform a job that

involves cutting paper to size so that another worker can photograph them and
then uses folders and index cards for company files.

. . . .

According to the DOT, an addresser does the following: addresses by hand or
typewriter, envelopes, cards, advertising literature, packages, and similar items for
mailing; may sort mail. United States Department of Labor, Dictionary of
Occupational Titles (1991). . . .

. . . Due to the widespread adoption of personal computers, printers, and word
processing software with mail merge features, there is substantially less need in
the modern economy, as compared to the economy of the 1970s and earlier, for
employees whose only responsibility is to address items for mailing.

Doc. 20 at 8-10.

Plaintiff's argument that the DOT is obsolete and cannot be a reliable source for the ALJ

or VE, is foreclosed by the agency's rules and Tenth Circuit precedent. Agency regulations and

policy direct ALJs to consider the DOT as "reliable job information" and to "rely primarily on

the DOT . . . for information about the requirements of work in the national economy" for

disability determinations. SSR 00-4p, 2000 WL 1898704, at *2; *see also* 20 C.F.R. §

404.1560(b)(2); 20 CFR § 404.1566(d)(1); *see Haddock v. Apfel*, 196 F.3d 1084, 1089-90 (10th

Cir. 1999).

More importantly, as the Commissioner points out, in June 2024, the agency issued an

emergency message that "clarifie[d] and consolidate[d] guidance" for step five findings

involving certain occupations, including document preparer, surveillance system monitor, and

addresser. *See* Guidance Regarding the Citation of Certain Occupations at Step Five of the

Sequential Evaluation Process, EM-24027 (effective date June 22, 2024), https://secure.ssa.gov/

apps10/referencearchive.nsf/links/06212024022159PM. The agency reaffirmed that "we take

administrative notice of the DOT" but acknowledged that "[s]ome courts have questioned

whether some occupations continue to be performed in the manner that they are described in the

DOT." *Id.* § B. It advised that:

> An adjudicator may not cite any of the DOT occupations listed below to support a framework "not disabled" determination or decision without additional evidence from a VS or VE supporting the adjudicator's conclusion that, as the occupation is currently performed:
>
> • Its requirements are consistent with the individual's RFC, and
>
> • It exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant.

*Id.* § C.

At the hearing, which was held on November 14, 2024, the ALJ elicited the following

testimony from the VE:

> [T]he addressing clerk . . . the occupation would still exist, but I think what we'd be looking at is . . . utilizing work processing capabilities.
>
> . . . .
>
> Microfilm document preparer, microfilming is still a very viable technology. I would say that the microfilm preparer though, not the person doing the microfilming , but the person preparing the documents, in a sense this is expanded, the vocational aspect of that to include preparing documents or scanning into a computer. But microfilming is still a very viable way of storing documents long term. A Surveillance system monitor, once upon a time, when the DOT was first drafted, was more dealing with watching a monitor as far as monitoring things in a government -- it was a government job, basically, in transportation facilities. Now I think it's expanded quite a bit. It's more dealing with looking at computers, you know, surveillance -- video surveillance screens, and things of that nature. And addressing clerk, as I've mentioned some moment ago, is utilizing work processing rather than using any type of typewriter type situations.

AR 1162, 1165.

This testimony satisfies the agency's new policy of establishing the requirements of the

jobs as currently performed. Plaintiff does not show that the VE is wrong as a matter of law that

these jobs still exist in some altered form, or that microfilm does still exist in archives and

libraries as a storage medium. In particular, the Court finds persuasive the VE's testimony that the document preparer job uses word processing software, and the surveillance systems monitor job relies on computer surveillance.

The new policy also requires that the ALJ elicit testimony as to whether each job—as currently performed—exists in significant numbers. Relatedly, Plaintiff here argues that these jobs do not exist in significant numbers in the national economy today in order to satisfy the agency's burden at step five. Doc. 20 at 10-11. In a decision Plaintiff cites, Judge Khalsa evaluated in considerable detail the sources of job numbers the VE relied on in that case, and found that "[t]he VE's testimony here—which showed an erroneous understanding of his sources' methodologies and failed to demonstrate the application of expertise, experience, or individual research—lacks any indicia of reliability, and no reasonable mind could accept it as adequate to support his job number estimates." *Milner v. Kijakazi*, No. 20cv1016 KK, 2022 WL 1125402, at *12 (D.N.M. Apr. 15, 2022).

In the present case, Plaintiff fails to develop a similar argument regarding the VE's job numbers. For instance, Plaintiff offers no analysis of the sources the VE used and no citation to pertinent authorities about the reliability of these sources. Plaintiff argues only that the Court should reject, as a matter of law, the VE's testimony that thousands of these jobs exist in the national economy. Doc. 20 at 11. Absent a more comprehensive examination of the sources the VE used here and an explanation of why these sources are unreliable, the Court has no basis to disagree with the VE's conclusions as Judge Khalsa did in *Milner*. Nor does Plaintiff close the loop by making any argument about how many jobs would be sufficient to find that the jobs exist in "significant" numbers. *Cf. Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004). Therefore, the

Court finds that Plaintiff did not adequately develop an argument related to job numbers. Because this argument is not adequately developed, the Court declines to remand on this basis.[4]

## II.    Dr. Owen's Opinion

### A.    Appeals Council's Mandate

Plaintiff argues that the ALJ did not follow the Appeals Council's mandate with respect to the opinion of the examining psychological consultant, Dr. Owen. Doc. 20 at 11-12. Analyzing this argument first requires a thorough discussion of this case's procedural history. Plaintiff first filed her disability benefits application in May 2019. AR 32. The ALJ denied benefits, finding in relevant part that:

> The undersigned is partially persuaded by the opinion of consultative examiner, John Owen, Ph.D., who found the claimant would have no difficulty understanding or remembering very short and simple instructions, carrying out instructions, working without supervision, mild difficulty attending and concentrating, moderate difficulty understanding and remembering detailed or complex instructions, interacting with supervisors, and adapting to changes in the workplace, and moderate to marked difficulty persisting at tasks, interacting with coworkers and the public, and using public transportation. (8F/4). The opinion is partially supported by evidence cited of the claimant's PTSD, depression, anxiety, and panic disorder, with reported isolative behavior and memory difficulties, and her impaired recall and intact attention and concentration on examination. (8F/1-4). However, the evidence of record indicates the claimant has no more than moderate limitations in mental functioning for the reasons previously stated.

AR 42.

The Appeals Council denied review. On appeal, by unopposed motion of the Commissioner, this Court reversed and remanded for further proceedings. AR 1202-05. On remand, the Appeals Council directed:

> The hearing decision does not contain an adequate evaluation of the opinion of the psychological consultative examiner, John Owen, Ph.D. (Exhibit 8F) . . . .

---

[4] *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1210 (10th Cir. 2006) (insufficiently developed argument with no citation to authority is waived); *Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (waiver doctrines "are equally applicable in social security cases").

Pursuant to 20 CFR 404.1520c, Administrative Law Judges will articulate in the decision how persuasive they find all of the medical opinions and all of the prior administrative medical findings in a case record. The factors of supportability and consistency are the most important factors to be considered when determining how persuasive the Judge finds a medical source's medical opinions or prior administrative medical findings to be. Additionally, pursuant to Social Security Ruling 96-8p, where the assessed residual functional capacity "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Here, the Administrative Law Judge finds Dr. Owen's opinion to be partially persuasive, but does not evaluate Dr. Owen's entire opinion (Decision, page 11). Dr. Owen opined that the claimant had moderate to marked difficulties interacting with coworkers and moderate difficulties interacting with supervisors, which the Administrative Law Judge acknowledges (Exhibit 8F, page 4; Decision, page 11). However, the Administrative Law Judge did not include any limitation regarding interacting with coworkers or supervisors in the residual functional capacity and did not provide a narrative explanation as to why the residual functional capacity does not contain any limitation interacting with coworkers or supervisors, despite finding Dr. Owen's opinion partially persuasive (Finding 5; Decision, page 11; Social Security Ruling 96-8p).

AR 1208-09.

On remand, the ALJ reviewed Dr. Owen's opinion and stated:

[Dr. Owen] found the claimant had moderate difficulty understanding and remembering detailed or complex instructions, but not very short and simple ones. He found the claimant had no difficulty carrying out instructions or working without supervision. He found she had mild difficulty attending and concentrating and moderate to marked difficulty persisting at tasks. He found she had moderate difficulty interacting with supervisors and moderate to marked difficulty interacting with coworkers and the public. He indicated she had moderate difficulty adapting to changes in the workplace and moderate to marked difficulty using public transportation. (Exhibit 8F, page 4). This opinion was based on a detailed consultative examination of the claimant. The undersigned finds it is partially persuasive; however, the record supports no more than moderate limitations in mental functioning except for a mild limitation in understanding, remembering and applying information. Dr. Owen's examination noted the claimant functioned in an average range of mental ability with no delusions, hallucinations, or loose associations, which supports a finding of no more than moderate limitations. (Exhibit 8F, page 3).

AR 1132.

On appeal, Plaintiff acknowledges that the ALJ followed the instructions of the Appeals

Council to either include in the RFC a limitation regarding interacting with coworkers or

supervisors or provide a narrative explanation as to why the RFC does not contain any limitation on interacting with coworkers or supervisors. Doc. 20 at 13. The Court finds that the ALJ complied with the Appeals Council's mandate.

But Plaintiff also seizes on the Appeals Council's general comment that, "Here, the Administrative Law Judge finds Dr. Owen's opinion to be partially persuasive, but does not evaluate Dr. Owen's entire opinion (Decision, page 11)." Doc. 20 at 13. Plaintiff goes on to argue various ways in which she contends the ALJ's second opinion does not "evaluate Dr. Owen's entire opinion." *Id.* The Court disagrees that the Appeals Council's general comment is of much use in the context of evaluating compliance with the mandate rule. The Court will instead consider, separately from the mandate rule, whether the ALJ committed error in evaluating Dr. Owen's opinion under the applicable legal standards.

B.    <u>Mental Limitations</u>

Plaintiff argues that if the ALJ says she finds a doctor's opinion persuasive, then the RFC should match that opinion. Doc. 20 at 13. If the RFC does not match that opinion, the ALJ should explain why it does not. *Id.* The Court agrees that this is the relevant legal standard. *See Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007); SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

With respect to Plaintiff's mental limitations, Dr. Owen opined that she would have:

- moderate difficulty in understanding and remembering detailed or complex instructions;

- mild difficulty in ability to attend and concentrate;

- moderate to marked difficulty in ability to persist at tasks;

- moderate to marked difficulty in ability to interact with the public and co-workers;

- moderate difficulty in ability to interact with supervisors;

- moderate difficulty in ability to adapt to changes in the workplace; and

- moderate to marked difficulty in ability to use transportation.

The ALJ explained that Dr. Owen's opinion was partially persuasive. That is, Dr. Owen's mild limitations and most of his moderate limitations were persuasive, but (1) anything more than moderate limitations (such as marked limitations) was not persuasive; and (2) anything more than a mild limitation in understanding, remembering and applying information was not persuasive. The reason the ALJ gave was that "Dr. Owen's examination noted the claimant functioned in an average range of mental ability with no delusions, hallucinations, or loose associations." AR 1131.

Plaintiff argues that "[t]he ALJ failed to adequately provide why Dr. Owen's opinion was not supported or consistent." Doc. 20 at 14. To the extent Plaintiff brings an articulation error, the Court disagrees: the ALJ stated why the limitations at issue were rejected—that is, based on findings made in Dr. Owen's own opinion. This statement addresses the factors the regulation requires the ALJ to address.

With respect to the substance of the assigned limitations, Plaintiff focuses on two things: (1) Dr. Owen's opinion that Plaintiff would have a moderate to marked difficulty in the ability to use public transportation; and (2) his opinion that Plaintiff would have moderate difficulty in understanding and remembering detailed or complex instructions. The Court will address each subject in turn.

*Public transportation*. Dr. Owen assigned a "moderate to marked difficulty" in Plaintiff's ability to use public transportation. AR 689. Because the ALJ stated that anything more than moderate limitations would be inconsistent with Dr. Owen's examination results, the Court finds that the ALJ explained why she did not adopt a "marked" difficulty in using public

transportation. Arguably, however, that leaves a "moderate" difficulty in using public transportation which the ALJ must either adopt in the RFC or explain why she did not. The Court agrees this limitation is neither in the RFC nor mentioned in the opinion as having been rejected.

But this does not necessarily mean the ALJ committed error. That is, Plaintiff's argument seems to assume that "traveling" is a mental work-related limitation or impairment. Doc. 20 at 18. Under the agency's policies, it is not. *See* Mental Limitations, POMS[5] DI 25020.010, § A(3). Nor does Plaintiff argue that it is a requirement in the DOT description of the relevant jobs. Hypothetically, of course, the ability to travel to and from work could be relevant if Plaintiff shows she is not capable of traveling to a job using public *or* private transportation, and if the ALJ assigns jobs at step five which require some sort of transportation to get to and from work (i.e., cannot be performed from home). But here, the record is insufficiently developed as whether any of that is the case.

Nor does Plaintiff fully develop such arguments on appeal to this Court. Again, Plaintiff's argument simply assumes that transportation is a mental work-related impairment that must be accounted for in the RFC. Doc. 20 at 18. But Plaintiff does not cite any authority to support this assumption. The ALJ's failure to discuss Dr. Owen's moderate restriction on the ability to use public transportation is not grounds for reversal where Plaintiff has not otherwise shown how it affects the finding that she can perform jobs in the national economy.

*Detailed or complex instructions.* Plaintiff also challenges the ALJ's assessment of mental limitations related to understanding and remembering instructions. First, Plaintiff argues

---

[5] The Social Security Administration's Programs Operations Manual System ("POMS") is not legally binding, but the Tenth Circuit has referred to it as "persuasive." *Neikirk v. Massanari*, 13 F. App'x 847, 849 (10th Cir. 2001). Plaintiff in this case makes no argument that the Court should depart from its provisions.

that the ALJ failed to adequately evaluate Dr. Owen's opinion by "reconciling that she has no difficulty with her ability to carry out very short and simple instructions but a moderate difficulty with understanding and remembering detailed or complex instructions." Doc. 20 at 14. This argument is somewhat ambiguous. If Plaintiff means that the ALJ should have "reconciled" Dr. Owen's opinion because it is internally inconsistent, the Cout disagrees. A claimant who has difficulty carrying out complicated instructions may very well have no problem carrying out simple instructions. *See* AR 698 (Dr. Owen opinion). Plaintiff does not explain why the two are inconsistent. Without a persuasive explanation, the Court must reject the premise of Plaintiff's argument.

If, on the other hand, Plaintiff means that the ALJ should have "reconciled" Dr. Owen's opinion (moderate difficulty with both detailed and complex instructions) with the RFC (Plaintiff can follow detailed but not complex instructions), the Court still disagrees. The ALJ explained why she found Plaintiff had the ability to follow detailed but not complex instructions. AR 1131; AR 142 (state agency nonexamining consultant opinion). The ALJ also explained why she did not adopt all of Dr. Owen's limitations. AR 1131. This is a sufficient explanation which the Court can follow.

Nonetheless, Plaintiff insists that "[t]he ALJ failed to adequately provide why Dr. Owen's opinion was not supported or consistent." Doc. 20 at 14. As a procedural argument, the Court disagrees. The ALJ said why she found Dr. Owen's opinion was not supported: Dr. Owen's own examination results did not support all of his limitations. AR 1131. And as a substantive argument, Plaintiff fails to develop it. Plaintiff does not say what about the ALJ's reasoning was error, or cite any authority in support of such an argument. The Court thus does not examine whether the ALJ's reason was correct.

Next, Plaintiff complains that the findings about her mental limitations between the first ALJ decision and the second ALJ decision are inconsistent with each other. Doc. 20 at 14-15. But an ALJ on remand is not bound by previous findings. *See* Administrative Law Judge Decision When Case Remanded by Court, POMS HA 01280.08, § A ("If the Appeals Council (AC) remands a case to the hearing level after a court remand, it generally vacates the entire administrative law judge (ALJ) decision, and the ALJ must consider all pertinent issues de novo."). Plaintiff cites no legal requirement to explain an alteration from a previously issued ALJ opinion.

The gist of Plaintiff's argument is that the ALJ's first opinion limited Plaintiff to simple, routine, and repetitive work. Because this same limitation on remand (along with the other new restrictions) would have resulted in no jobs available for Plaintiff to perform, the ALJ altered the RFC to state that Plaintiff is able to remember, understand, and carry out detailed but not complex instructions. Doc. 20 at 15-16. The ALJ did this, Plaintiff suggests, for no other reason than to reach a finding of not disabled. *Id.*

An ALJ's motivation for assigning a particular RFC is not a relevant consideration for a reviewing court. Plaintiff does not, and cannot, cite any authority that allows a Court to reject an ALJ's decision based on a claimant's unsupported suspicion that an ALJ's motive for revising a previous RFC was to enable the ALJ to find that the claimant is not disabled. The legal standards Plaintiff does cite—the requirement to explain an RFC and to evaluate a medical opinion for supportability and consistency—are not violated just because an ALJ alters an RFC after remand even though the medical evidence remains the same. Here, the ALJ explained why she rejected the pertinent mental limitations Dr. Owen assigned. Plaintiff does not challenge the substance of this explanation in any meaningful way, except to highlight that it is different from the finding in

the ALJ's first opinion. Because this is not a relevant legal factor, the Court must reject

Plaintiff's challenge and affirm the decision below.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Amended Motion To Remand, Doc. 20, is

**DENIED**.


**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**

16